FILED
CLERK

7/29/2019 1:04 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GUILLERMO ALVARADO AJCÚC,

                Petitioner,

        -against-

THE PEOPLE OF THE STATE
OF NEW YORK,

                Respondent.
----------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
18-CV-00183

**AZRACK, United States District Judge**

      Petitioner, Guillermo Alvarado-Ajcúc (the "Petitioner"), proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1, the "Petition.") Following a jury trial in Suffolk County Court, Petitioner was convicted of two counts of Murder in the Second Degree. On July 15, 2014, Petitioner was sentenced to two indeterminate terms of twenty-five years to life in prison, to run concurrently. He is presently incarcerated.

      Petitioner asserts three grounds for habeas relief: (1) failure to charge the jury with Manslaughter in the Second Degree as a lesser included offense of Murder in the Second Degree; (2) failure to prove Petitioner's guilt of Felony Murder beyond a reasonable doubt, and that the verdict was against the weight of the evidence; and (3) his sentence is unduly harsh and excessive. (Pet., at 2.) All of Petitioner's claims were exhausted and adjudicated on the merits on direct appeal in state court. For the following reasons, the Petition is DENIED in its entirety.

### I. BACKGROUND

**A. Factual Background**

      Petitioner's convictions stem from the murder of a woman in Riverhead, New York on May 6, 2012. The evening before, Saturday, May 5, 2012, the victim was at the Sabor Latino bar

in Riverhead. (Trial Tr. I, May 15–20, 2014, ECF No. 4-17, 375:3–21.) Throughout the night, witnesses reported that the victim was drinking and appeared intoxicated. (Id. 142:16–25, 143:2–3, 381:2–3.) That same night, Petitioner went to Sabor Latino to watch a boxing fight. (Id. 375:3–21.)

In the early morning hours of May 6, 2012, video surveillance showed Petitioner and the victim walking away from the bar together. (Id. 108:2–9, 111:15–18, 189:6–10.) Later that morning, between 10:00 and 11:00 a.m., Petitioner went to a local deli and expressed to an individual named Rigoberto Coslaya ("Coslaya") that he feared he had hurt a girl earlier that morning. (Id. 403:22–406:19.) At trial, Coslaya testified that Petitioner told him that he left the victim in the woods and did not know whether she was dead or alive. (Id. 406:16–19, 412:7–413:6.)

On Monday, May 7 at 8:15 a.m., an employee of the Department of Motor Vehicles Office, which was located in the same shopping center as Sabor Latino, saw the victim's body in the ditch of a brushy area adjacent to the parking lot. (Id. 31:15–21, 32:7–13, 33:11–21, 35:4–13.) The victim was face down with her pants and underwear pulled down around her ankles. (Id. 33–34, 47:16–18.) Once the Medical Examiner arrived at the scene, the victim's body was rolled over, revealing markings on her neck. (Id. 237:3–6, 265:2–18.)

The autopsy report showed that the victim had injuries consistent with neck compression, including a nearly horizontal line that ran from the right side of her neck, across the midline, to the left side. (Trial Tr. II, May 21–30, 2014, ECF No. 4-18, 558:2–560:16, 578:13–21.) The victim also had petechial hemorrhages around her eyes and cheeks, consistent with strangulation. (Id. 558:2–17, 559:17–560:2.) These findings, coupled with constricted blood vessels in the victim's brain, led the Medical Examiner to conclude that the victim died as a result of neck compression

from strangulation that lasted over several minutes. (Id. 564:18–565:17, 584–85.) The sexual assault kit performed during the autopsy showed no semen or male DNA; however, Petitioner's DNA was found under the victim's fingernails. (Id. 645:8–22, 651:14–21, 656:10–657:25; Trial Tr. I, 307:25–308:9.)

When Coslaya learned of the victim's death, he spoke to the police regarding his conversation with Petitioner at the deli the morning of May 6. (Trial Tr. II, 426:6–8; Trial Tr. I, 407:6–8.) The police met with Coslaya at his cousin's house on May 7 and obtained a still image from surveillance footage taken at the deli on the morning of May 6. (Trial Tr. II, 426:6–8, 427:6–11; Trial Tr. I, 414:9–14.) The image depicted Petitioner at the deli. (Trial Tr. II, 427:20–428:3.)

On May 16, two detectives from the Suffolk County Police Department Homicide Bureau, Detective Tulio Serrata and Detective Thomas Walsh, approached Petitioner outside his home. (Id. 426:9–427:5.) The detectives showed Petitioner the surveillance photo from the deli. (Id. 427:6–11.) After Petitioner confirmed that he appeared in the photo, the detectives told Petitioner that they were investigating the death of the victim and asked him to accompany them to the precinct for an interview. (Id. 427:12–19, 501:4–7.) Petitioner agreed. (Id. 501:8–11.)

On the way to the Riverhead Police Department, Detective Serrata read Petitioner his Miranda warnings in Spanish off a rights card.[1] (Id. 429:2–18.) Petitioner waived his rights in Spanish, placed his initials next to each right on the card, and signed his name on the bottom of the card. (Id. 429:2–431:8, 432:2–433:11.) Detective Serrata told Petitioner that he was the last person to see the victim alive, to which Petitioner responded that he was not trying to hurt the victim. (Id. 434:11–17.) Following this statement, Detective Serrata told Petitioner that he was under arrest. (Id.)

---

[1] Petitioner moved from Guatemala to the United States and speaks Spanish. (See ECF No. 4-5; Trial Tr. II, 504:3–8.) Detective Serrata is also a fluent Spanish speaker. (Trial Tr. II, 437:22–438:9.)

3

Petitioner was interrogated by Detective Serrata and Detective Walsh for six hours at the Riverhead Police Department. (Id. 443:21–444:2.) During the course of interrogation, which was recorded, Detective Serrata spoke to Petitioner in Spanish and translated to Detective Walsh in English. (Id. 436:6–437: 6, 511:16–20.) When asked by Detective Serrata how Petitioner killed the victim, Petitioner responded, "with the belt," and demonstrated to the detectives how he looped his belt around the victim's neck. (Interview Tr., ECF No. 4-11 at 32–33.)

At the end of the interrogation, Petitioner signed a statement that was written by Detective Serrata in English and read to Petitioner by Detective Serrata in Spanish. (Id. at 99; ECF No. 4-5, the "Confession.") The Confession stated that Petitioner forced himself onto the victim, taking her pants off and putting his penis in her vagina before taking off his belt and choking her by wrapping it around her neck until she became unconscious, and then he left her there dead. (Confession; Interview Tr. at 99.) Petitioner signed the statement and swore to its truth. (Id.) After signing the Confession, Petitioner was photographed. (Trial Tr. I, 83:8–15; Trial Tr. II, 465:4–14.) The photographs depict a rash consistent with poison ivy on Petitioner's neck, and healing scabs down his forearms consistent with recent scratches. (Trial Tr. I, 83:8–84:13, 85:3–86:15.) Petitioner consented to a buccal swab and gave the police permission to go to his house to collect the clothing he was wearing at the time of the crime. (Id. 351:12–17; Trial Tr. II, 460:15–461:11; Interview Tr. at 10).

**B. Procedural History**

    **1. Trial and Sentencing**

Prior to trial, the Suffolk County Court held a Huntley hearing on February 25–26, 2013 to determine the admissibility of Petitioner's oral and written statements made to Detective Serrata, as well as whether he voluntarily gave the buccal swab. (Huntley Hearing, Feb. 25–26, 2013, ECF

No. 4-15.) On March 29, 2013, the court found that all statements made to Detective Serrata, and the buccal swab, were given voluntarily and therefore were admissible at trial. (Huntley Decision, Mar. 29, 2013, ECF No. 4-8 at 45–47.)

On May 30, 2014, upon conclusion of the two-week-long trial, the jury found Petitioner guilty of two counts of Murder in the Second Degree: Intentional Murder (N.Y. Penal Law § 125.25(1)) and Felony Murder (N.Y. Penal Law § 125.25(3)).[2] (Trial Tr. II, 864:15–865:2.) On July 15, 2014, Petitioner was sentenced to two indeterminate terms of twenty-five years to life in prison, to run concurrently. (Sentencing Tr., July 15, 2014, ECF No. 4-16 at 15.)

### 2. Direct Appeal

Petitioner, through counsel, appealed his conviction and sentence to the New York Appellate Division, Second Department (the "Appellate Division"). (Notice of Appeal, ECF No. 4-8 at 85.) On appeal, Petitioner raised three arguments, discussed infra. (Appellant Mem., ECF No. 4-2.) On September 21, 2016, the Appellate Division affirmed Petitioner's conviction and sentence. See People v. Alvaradoajcuc, 142 A.D.3d 1094, 37 N.Y.S.3d 589 (2d Dep't 2016). On December 7, 2016, the New York State Court of Appeals denied Petitioner's application for leave to appeal. People v. Alvaradoajcuc, 28 N.Y.3d 1122 (2016). Petitioner has not pursued any post-conviction collateral relief at the state level. (Pet., at 5, 25–26.)

---

[2] The predicate felony for the felony murder count was Rape in the First Degree (N.Y. Penal Law § 135.50).

5

### 3. The Instant Petition

In November 2017, Petitioner, proceeding pro se, timely filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[3] (Id. at 38.) Petitioner raises the same grounds for relief as were raised on direct appeal.[4] (Id. at 5, 17, 26.)

## II. DISCUSSION

### A. Standards of Review

#### 1. AEDPA Standard of Review

#### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict the "power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a district court will "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must satisfy three hurdles: (1) the exhaustion of state court remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of a state court decision. See 18 U.S.C. § 2254.

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] The Court received the Petition on January 9, 2018. (See Pet., at 1.)

[4] It appears Petitioner included as support for his Petition the exact pages from his appellate brief raising these arguments. (See Pet., at 2; Appellant Mem. at 5.)

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 412–13 (O'Connor, J., concurring).  A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  Id. at 413.  This standard does not require that all reasonable jurists agree that the state court was wrong.  Id. at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'"  Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'"  Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)).  This standard is "difficult to meet," and for good reason.  White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Metrish v. Lancaster, 569 U.S. 351, 357–58 (2013)), reh'g denied, 573 U.S. 927 (2014).  A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 419–20.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 2. Petitioner's Pro Se Status

Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). In light of Petitioner's pro se status, the Court will construe his submissions liberally and interprets them "to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se petitioner is not excused "from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam) (internal quotation marks omitted)).

## B. Claims for Relief

Petitioner raises three claims in support of his Petition for a writ of habeas corpus:

(1) "It was error for the trial judges to refuse to charge manslaughter in the second degree as requested by the defendant since there was a reasanable [sic] view of the evidence that he may have been guilty of the lesser crime and not the greater."

(2) "The [P]eople failed to prove appellant's guilt of felony murder beyond a reasonable doubt and the verdict was against the weight of the evidence."

8

(3) "The sentence imposed by the court of twenty-five years to life concurrent for each conviction of murder in the second degree was harsh and excessive and should be modified in the interest of justice."

(Pet., at 5, 17, 26.) None of these claims present a basis for habeas corpus relief.

**1. Ground One - Failure to Charge the Jury with the Lesser Included Offense of Manslaughter in the Second Degree**

At trial, the court refused Petitioner's request to charge the jury with Manslaughter in the Second Degree under N.Y. Penal Law § 125.15(1) (Reckless Manslaughter) as a lesser included offense of Murder in the Second Degree under N.Y. Penal Law § 125.25(1) (Intentional Murder). The jury ultimately convicted Petitioner of Murder in the Second Degree. Petitioner asserts now, as he did on direct appeal, that failing to charge the jury with the lesser included offense was error, and claims it entitles him to federal habeas corpus relief. (Pet., at 5.)

On direct appeal, the Appellate Division found that the trial court properly refused to instruct the jury concerning the lesser included offense, because when "viewing the evidence in the light most favorable to the defendant, there is no reasonable view of the evidence which would support a finding that the defendant's conduct was merely reckless, or that he intended anything other than to kill the victim." Alvaradoajcuc, 142 A.D.3d at 1094, 37 N.Y.S.3d at 591.

"Neither the Supreme Court nor [the Second Circuit] has decided whether the failure to instruct the jury on lesser included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition." Knapp v. Leonardo, 46 F.3d 170, 179 (2d Cir. 1995); see also Sostre v. Lee, No. 11-CV-3439, 2013 WL 3756474 at *7 (E.D.N.Y. July 15, 2013) (holding that a trial court's refusal to charge a lesser included offense is not cognizable under 28 U.S.C. § 2254(d)(1)). Given the unsettled nature of federal law in this area, a claim that a state trial court erred in failing to instruct the jury on a lesser included offense in a non-capital case like Petitioner's is not cognizable in a habeas corpus proceeding. See Bonilla v. Lee, 35 F. Supp. 3d 551, 569

9

(S.D.N.Y. 2014) (citing Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996) (finding that because a habeas petition cannot be used to apply a new rule of law, a claim for failure to include a lesser included offense in a noncapital case is precluded from review)). Accordingly, Petitioner's first claim is denied as it cannot form a basis for habeas relief.

### 2. Ground Three - Harsh and Excessive Sentence

Petitioner also claims, as he did on direct appeal, that the sentence imposed by the trial court of two indeterminate terms of incarceration of twenty-five years to life, to run concurrently, was unduly harsh or excessive. (Pet., at 3.) The Appellate Division held that "[t]he sentence imposed was not excessive." Alvaradoajcuc, 142 A.D.3d at 1095, 37 N.Y.S.3d 589 at 591. It is well settled that an excessive sentence claim, such as Petitioner's, does not present a federal constitutional issue when the received sentence "is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Taylor v. Connelly, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) (noting same).

Under New York state law, Petitioner could have received a maximum sentence of twenty-five years to life had he been convicted of either count of Murder in the Second Degree (Intentional Murder or Felony Murder). N.Y. Penal Law §§ 70.00; 125.25(1); 125.25(3). Accordingly, Petitioner's sentence of two indeterminate terms of twenty-five years to life imprisonment, to run concurrently, was within statutory parameters and does not present a federal constitutional issue. Thus, this claim similarly fails to present any grounds for federal habeas corpus relief.

### 3. Ground Two - Failure to Prove Felony Murder Beyond a Reasonable Doubt and Verdict Was Against the Weight of Evidence

Petitioner's final claim for habeas corpus relief is that the People failed to prove his guilt of felony murder beyond a reasonable doubt, and the verdict was against the weight of the evidence.[5] (Pet., at 3.)

On direct appeal, the Appellate Division ruled that Petitioner's conviction was not against the weight of the evidence, and that in viewing the evidence in the light most favorable to the prosecution, it was legally sufficient to establish the defendant's guilt of felony murder beyond a reasonable doubt. Alvaradoajcuc, 142 A.D.3d at 1095, 37 N.Y.S.3d at 591. In so concluding, the Appellate Division "conduct[ed] an independent review of the weight of the evidence," but "accord[ed] great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor." Id.

Only Petitioner's claim that the People failed to prove his guilt beyond a reasonable doubt presents a cognizable claim for federal habeas corpus relief. Unlike a legal sufficiency claim, which is based on federal due process principles, "[a] 'weight of the evidence' claim is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)." Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). Assessments of the weight of the evidence are thus not federally cognizable grounds for habeas corpus relief. McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); see also Correa, 172 F. Supp. 2d at 381 (noting that a habeas court is precluded from

---
[5] Notably, Petitioner does not challenge his conviction of Intentional Murder under N.Y. Penal Law § 125.25(1), either as against the weight of the evidence, or on legal sufficiency grounds.

11

considering a weight of the evidence claim, but can review a legal sufficiency claim as it is based on federal due process principles).

For the reasons set forth below, the Court concludes that the Appellate Division's ruling that the evidence was legally sufficient to establish Petitioner's guilt of felony murder beyond a reasonable doubt was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the record. Thus, this final claim does not entitle Petitioner to habeas relief.

i. Legal Standard

In reviewing a federal habeas corpus challenge to the evidentiary sufficiency of a state criminal conviction, the Court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1970) (internal quotation marks and citations omitted) (emphasis in original); see also Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) ("[T]he applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). The Court must review the evidence in the light most favorable to the prosecution. Ponnapula, 297 F.3d at 179 (citing Jackson, 443 U.S. at 318). Moreover, the Petitioner bears a "very heavy burden" in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence. Id. (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326). Thus, where there are conflicts in the testimony,

a federal habeas court must defer to the jury's resolution of the credibility of the witnesses. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996); Dismel v. LaValle, No. 11-CV-85, 2013 WL 4775561, at *7 (E.D.N.Y. Sept. 6, 2013).

### ii. Application

When considering the sufficiency of the evidence, a federal court looks to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999); see also Jackson, 443 U.S. at 324. In New York, a person is guilty of felony murder when:

> Acting either alone or with one or more other persons, he commits or attempts to commit . . . rape in the first degree . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he . . . causes the death of a person other than one of the participants . . . .

N.Y. Penal Law § 125.25(3). A person is guilty of rape in the first degree when "he or she engages in sexual intercourse with another person by forcible compulsion." N.Y. Penal Law § 130.35.

Considering the elements of felony murder, the record evidence (when viewed in the light most favorable to the prosecution) is legally sufficient for a rational juror to conclude, beyond a reasonable doubt, that Petitioner was guilty of felony murder, with rape in the first degree as the predicate felony. See Jackson, 443 U.S. at 319 (asking, on habeas review, whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

### A. The Confession

Here, Petitioner admitted during the interrogation that he raped the victim. (Interview Tr. at 36–37, 39.) This itself can be enough to deny a sufficiency challenge raised in a habeas petition. See Farrington v. Senkowski, 214 F.3d 237, 241 (2d Cir. 2000) (upholding a guilty verdict of felony murder beyond a reasonable doubt in light of a petitioner's videotaped statement in which he admitted to attempting to commit robbery). However, construing the Petition liberally,

Petitioner contends that his confession was not voluntary, asserting that the detectives "employed subtle techniques to extract admissions from [Petitioner]." (Pet., at 19.) Accordingly, the Court must assess whether the Huntley hearing court properly found that the Confession was voluntary, such that the jury was permitted to consider it in rendering the guilty verdict. (See Huntley Decision at 45–47.)

In assessing the voluntariness of a confession, a court must consider the totality of the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973); see also United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991) (noting same). Some of the factors considered include the age and intelligence of the defendant, whether the defendant was advised of his constitutional rights, the length of the detention, whether the questioning was prolonged, the conduct of law enforcement officials, and whether there was physical punishment such as the deprivation of food or sleep. See id.

There is no dispute that Petitioner was advised of his Miranda rights in advance of making any statements to the detectives. (Trial Tr. II, 429:2–18, 432:2–433:11.) Moreover, Petitioner was read his rights and questioned in his native language of Spanish.[6] (Id. 433:9–11, 437:22–24, 511:16–20.) During the recorded interrogation, Petitioner, who was twenty-one-years-old at the time, was the first to tell the detectives that he led the victim to the parking lot behind Sabor Latino. (Interview Tr. at 25–26.) Without being prompted, he mapped out exactly how he led the victim to the rear of the parking lot. (Id. at 68–70.) Additionally, when Detective Serrata asked how

---

[6] Although there was some testimony regarding a particular Spanish dialect potentially also spoken by Petitioner, no evidence was adduced showing that Petitioner was unable to speak and understand the Spanish spoken by Detective Serrata. (See Trial Tr. I, 393:19–25, 407:9–17; see also Huntley Hearing.) Additionally, Petitioner was assisted by a Spanish interpreter throughout the trial. (See Trial Tr. I; Trial Tr. II.) Most critically, Petitioner does not contend in his Petition that he was unable to speak or understand Spanish. (See Pet., at 24.)

14

Petitioner killed the victim, Petitioner said, "with the belt," and demonstrated to the detectives how he looped his belt around the victim's neck. (Id. at 32.) When asked further if he penetrated the victim, he answered in the affirmative. (Id. at 39.) Petitioner at first claimed that after raping the victim, he put her pants on. (Id. at 34, 70.) However, when the detectives indicated that this was improbable, Petitioner admitted that he left the victim with her pants down. (Id. at 71.) At the conclusion of the interrogation, Detective Serrata wrote out a statement which he read to the Petitioner in Spanish. (Id. at 98–99.) Petitioner swore to the written statement detailing how he pulled down the victim's pants and forced himself on her before choking her with the belt and leaving her dead. (Id.; ECF No. 4-5.)

Furthermore, in accordance with the factors considered in Schneckloth, there was no evidence that Petitioner was mistreated or threatened during interrogation. (See Interview Tr.) At no point did Petitioner ask for a lawyer. (Id.) During the course of the interrogation, Petitioner was given water. (Id. at 2, 78, 122.) He was offered a bathroom break on multiple occasions and used the bathroom at one point. (Id. at 2, 62, 78, 99, 103, 117, 121.) He was also given coffee and a sandwich while in the interrogation room. (Id. at 123.) Thus, the state court's determination that Petitioner's statements were voluntary and admissible was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the record.[7]

---

[7] As Petitioner raised the exact same arguments in his direct appeal, the Appellate Division presumably considered whether Petitioner's confession was appropriately considered by the jury in rendering its decision regarding the legal sufficiency of the evidence. Thus, the state court's conclusion that Petitioner's confession was voluntary is entitled to AEDPA deference. Even assuming, arguendo, that the Appellate Division did not consider the voluntariness of Petitioner's oral and written statements in its merits determination of the legal sufficiency question, upon a de novo review of the record, the Court still renders the Confession voluntary.

B. Corroborating Evidence

Petitioner's sworn Confession is further corroborated by physical evidence. The victim was found with her pants and underwear around her ankles. (Trial Tr. I, 33:22–34:10, 47:16–18.) Petitioner's DNA was found under the victim's fingernails, and the Petitioner had scratches down his arms upon his arrest, which the Medical Examiner testified likely occurred at the time of the victim's death. (Id. 83:8–86:16; Trial Tr. II, 645:8–22, 651:14–21, 656:10–657:25.) The blunt force trauma to the victim's neck, back, and head further corroborates Petitioner's admission of a physical struggle that ensued during the rape before he choked her with his belt. (Interview Tr. at 41; Trial Tr. II, 560:2–24, 561:7–12.) This physical corroboration of Petitioner's oral and written statements is more than enough for a reasonable juror to find that Petitioner committed or attempted Rape in the First Degree (N.Y. Penal Law § 130.35) beyond a reasonable doubt, and then in the course of that crime, caused the victim's death (N.Y. Penal Law § 125.25). See Williams v. Bradt, No. 10-CV-2858, 2012 WL 2914892, at *8 (E.D.N.Y. July 17, 2012) (finding that a petitioner's written and oral admissions made during interrogation, coupled with other substantial confirmatory evidence, were sufficient to uphold a felony murder conviction beyond a reasonable doubt); see also Gruttadauria v. Conway, No. 09-CV-4258, 2013 WL 5507145, at *7 (E.D.N.Y. Sept. 30, 2013) (upholding, on habeas review, a jury's determination of petitioner's guilt of robbery beyond a reasonable doubt in light of the petitioner's confession and corroborating circumstantial evidence).

In light of the evidence presented at trial, a rational juror could have readily concluded that Petitioner was guilty of Felony Murder (N.Y. Penal Law § 125.25(3)) beyond a reasonable doubt. When viewing the evidence in the light most favorable to the prosecution, Petitioner has failed to satisfy the "heavy burden" of showing that the evidence adduced at trial was insufficient to support

his conviction.  See Ponnapula, 297 F.3d at 179.  Therefore, the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the record.  Thus, Petitioner's claim challenging the legal sufficiency of the evidence is meritless and hereby denied.

### III.  CONCLUSION

For the foregoing reasons, Petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254.  Accordingly, the Petition is DENIED.  A certificate of appealability shall not issue because Petitioner has failed to make a substantial showing of a denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2).  I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444–45 (1962).  The Clerk of this Court is respectfully directed to mail a copy of this Order to the pro se Petitioner and to close this case.

**SO ORDERED.**

Dated: July 29, 2019
Central Islip, New York

                                                                   /s/ (JMA)
                                                                   JOAN M. AZRACK
                                                                   UNITED STATES DISTRICT JUDGE